1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LEONARD FARLEY,

11          Plaintiff,                    No. 2:11-cv-1830 KJM KJN P

12       vs.

13   TIM VIRGA, et al.,

14          Defendants.              FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding without counsel.  Plaintiff claims that on

17   July 21, 2010, defendants were deliberately indifferent to his safety, and failed to protect

18   plaintiff, subjecting him to cruel and unusual punishment in violation of the Eighth Amendment.

19   On July 6, 2012, plaintiff filed a motion styled "Motion for Court to Step in and stop Defendant

20   Cannedy from taking out reprisal actions towards plaintiff for filing above case."  (Dkt. No. 33 at

21   1.)  The court construes this filing as plaintiff's third motion for preliminary injunction.

22          Plaintiff now claims defendant Cannedy retaliated against plaintiff for filing the

23   instant action because defendant Cannedy refused to allow plaintiff to remain in the Enhanced

24   Outpatient Program ("EOP") cell until housing became available in B yard.  Instead, defendant

25   Cannedy sent plaintiff to C-yard, which plaintiff claims is in the middle of a race war.  Plaintiff

26   alleges his housing on C-yard places his life in danger due to his stomach tumor, which can

1

1    endanger plaintiff's life if he is involved in an altercation.  While not entirely clear, it appears

2    that plaintiff argues that defendant Cannedy's actions were retaliatory because at the very next

3    classification hearing for inmate John Thomson, Cannedy allowed Thomson to remain in the

4    EOP cell, but denied plaintiff's earlier request to do the same.  Plaintiff provided the declaration

5    of inmate Thomson, who stated that at his classification hearing his single cell issues were

6    brought up, and defendant Cannedy informed him that there were no single cells available on B

7    yard, but she would keep Thomson housed in EOP until a cell became available.  (Dkt. No. 33 at

8    5.)

9            "The proper legal standard for preliminary injunctive relief requires a party to

10   demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm

11   in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

12   injunction is in the public interest.'"  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir.

13   2009), quoting Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008).

14           A Ninth Circuit panel has found that post-Winter, this circuit's sliding scale

15   approach or "serious questions" test survives "when applied as part of the four-element Winter

16   test."  Alliance for Wild Rockies v. Cottrell, 2011 WL 208360, at *7 (9th Cir. Jan. 25, 2011).

17   "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply

18   towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also

19   shows that there is a likelihood of irreparable injury and that the injunction is in the public

20   interest."  Id.  In cases brought by prisoners involving conditions of confinement, any preliminary

21   injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm

22   the court finds requires preliminary relief, and be the least intrusive means necessary to correct

23   the harm."  18 U.S.C. § 3626(a)(2).

24           Initially, the principal purpose of preliminary injunctive relief is to preserve the

25   court's power to render a meaningful decision after a trial on the merits.  See 11A Charles Alan

26   Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010).  As noted

                                                     2

1  above, in addition to demonstrating that he will suffer irreparable harm if the court fails to grant

2  the preliminary injunction, plaintiff must show a "fair chance of success on the merits" of his

3  claim.  Sports Form, Inc. v. United Press International, Inc., 686 F.2d 750, 754 (9th Cir. 1982)

4  (internal citation omitted).

5        Inmates do not have a constitutional right to be housed at a particular facility or

6  institution or to be transferred, or not transferred, from one facility or institution to another.

7  Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Johnson v. Moore, 948 F.2d 517, 519 (9th

8  Cir. 1991) (per curiam).  "Prison officials [may not] transfer an inmate to another prison in

9  retaliation for the inmate's exercise of his First Amendment right to pursue federal civil rights

10  litigation."  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).  However, "[s]peculative injury

11  does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."

12  Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988), citing Goldie's

13  Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984).  Rather, a presently existing

14  actual threat must be shown, although the injury need not be certain to occur.  See Zenith Radio

15  Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130-31 (1969); FDIC v. Garner, 125 F.3d 1272,

16  1279-80 (9th Cir. 1997), cert. denied, 523 U.S. 1020 (1998); Caribbean Marine, 844 F.2d at 674.

17        First, plaintiff alleges no specific facts demonstrating that defendant Cannedy's

18  actions in refusing plaintiff's request to remain in the EOP cell was motivated by retaliation.

19  Plaintiff appears to argue that the fact that Cannedy allowed inmate Thomson to remain in the

20  EOP cell pending availability on B Facility demonstrates a retaliatory motive.  However, timing

21  alone is insufficient.  Not every allegedly adverse action will support a retaliation claim.  See e.g.

22  Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on

23  the logical fallacy of post hoc, ergo propter hoc, literally, "after this, therefore because of this.").

24  Just because inmate Thomson was allowed to remain in the EOP cell does not demonstrate that

25  defendant Cannedy's earlier decision to transfer plaintiff to Facility C was motivated by

26  ////

1   retaliation.  Moreover, just because defendant Cannedy transferred plaintiff to Facility B two

2   years ago, while Facility B was allegedly having a race war (dkt. no. 33 at 2), does not

3   demonstrate a retaliatory motive without more factual allegations demonstrating such a motive.

4           Second, it appears both Facility B and C-yard have had race wars.  Plaintiff

5   previously argued that his life was put at risk while he was housed on Facility B because Facility

6   B experienced two race riots over a period of two years.  (Dkt. No. 23 at 4.)  However, the

7   injuries at issue in this action were not incurred during the January 19, 2010, or May 20, 2011

8   race riots at Facility B.  Rather, plaintiff's instant injuries resulted from an altercation on the B

9   Facility yard on July 21, 2010, over two years ago.  Because Facility B where plaintiff was

10   previously housed also experienced race riots, and plaintiff was not injured during the race riots,

11   plaintiff fails to demonstrate that his housing on C-yard while it is on lockdown because of an

12   alleged race war, does not demonstrate a threat of irreparable harm.[1]

13           Third, plaintiff appears to claim that he has a medical need to be housed on B-

14   Facility.  However, plaintiff previously submitted the September 22, 2010 letter from Dr. Preet

15   Sahota, M.D., Chief Physician and Surgeon at California State Prison, Sacramento, who states

16   there is no medical reason for plaintiff to be housed at either California Men's Colony or

17   California Medical Facility.  (Dkt. No. 22 at 38.)  Moreover, plaintiff provided Dr. Sahota's

18   August 25, 2010 letter in which Dr. Sahota explained that plaintiff's primary care physician

19   recommended plaintiff's housing at the Out-patient Housing Unit ("OHU") for plaintiff's safety,

20   but that

21         it is not medically necessary for [plaintiff] to be moved to the
          OHU.  If you feel safe in your current housing and disagree with

22         the move, you may stay where you are currently housed.

23   (Dkt. No. 22 at 36.)  Plaintiff apparently declined the OHU alternative housing assignment,

24

25         [1] Indeed, another court previously found that plaintiff was not in imminent danger if he

26   was not transferred to a medical facility because of his stomach tumor.  Farley v. Capot, et al.,
  1:06-cv-1760 LJO MJS (Fresno Division) (Dkt. No. 58 at 3).

1   because OHU housing would not allow plaintiff to program.  (Dkt. No. 22 at 37.)  Thus,

2   plaintiff's claim that he requires special housing due to his medical need is belied by the instant

3   record.

4          Fourth, in this action, plaintiff raises Eighth Amendment challenges based on

5   defendants' alleged failure to protect plaintiff from an assault on July 21, 2010.  Because the

6   instant motion challenges plaintiff's July 3, 2012 placement on C-yard, the motion is not

7   cognizable as part of the underlying complaint, and plaintiff's new claims will not be given a

8   hearing on the merits at trial.

9          Finally, injunctive relief should be granted "'sparingly, and only in a clear and

10  plain case.'"  Rizzo v. Goode, 423 U.S. 362, 378 (1976) (quoted case omitted).  The mere

11  possibility that plaintiff might be injured while housed on C-yard is insufficient to support an

12  injunctive relief request.  Pratt, 65 F.3d at 802 (holding that Pratt failed to establish that his

13  transfer was effected for retaliatory reasons, and was not justified by neutral institutional

14  objectives.)  Moreover, the Supreme Court has cautioned the federal courts not to interfere with

15  the day-to-day operations of the prisons, especially those decisions related to security, a task

16  which is best left to prison officials who have particular experience in dealing with prisons and

17  prisoners.  See Turner v. Safley, 482 U.S. 78 (1987).  Because placement of inmates in particular

18  facilities is often a matter of security, and plaintiff has asserted only speculative grounds to

19  support his claim of retaliation, the court declines to recommend an order prohibiting plaintiff's

20  transfer to C-yard.

21         For all of the above reasons, IT IS HEREBY RECOMMENDED that plaintiff's

22  July 6, 2012 motion for injunctive relief (dkt. no. 33) be denied.

23         These findings and recommendations are submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

25  days after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

5

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 21, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

farl1830.pi3

6