IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEONARD FARLEY,

       Plaintiff,                       No. 2:11-cv-1830 KJM KJN P

   vs.

TIM VIRGA, et al.,

       Defendants.             <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding without counsel. Plaintiff claims that on July 21, 2010, defendants were deliberately indifferent to his safety, and failed to protect plaintiff, subjecting him to cruel and unusual punishment in violation of the Eighth Amendment. On July 6, 2012, plaintiff filed a motion styled "Motion for Court to Step in and stop Defendant Cannedy from taking out reprisal actions towards plaintiff for filing above case." (Dkt. No. 33 at 1.) The court construes this filing as plaintiff's third motion for preliminary injunction.

        Plaintiff now claims defendant Cannedy retaliated against plaintiff for filing the instant action because defendant Cannedy refused to allow plaintiff to remain in the Enhanced Outpatient Program ("EOP") cell until housing became available in B yard. Instead, defendant Cannedy sent plaintiff to C-yard, which plaintiff claims is in the middle of a race war. Plaintiff alleges his housing on C-yard places his life in danger due to his stomach tumor, which can

endanger plaintiff's life if he is involved in an altercation. While not entirely clear, it appears that plaintiff argues that defendant Cannedy's actions were retaliatory because at the very next classification hearing for inmate John Thomson, Cannedy allowed Thomson to remain in the EOP cell, but denied plaintiff's earlier request to do the same. Plaintiff provided the declaration of inmate Thomson, who stated that at his classification hearing his single cell issues were brought up, and defendant Cannedy informed him that there were no single cells available on B yard, but she would keep Thomson housed in EOP until a cell became available. (Dkt. No. 33 at 5.)

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009), quoting Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008).

A Ninth Circuit panel has found that post-Winter, this circuit's sliding scale approach or "serious questions" test survives "when applied as part of the four-element Winter test." Alliance for Wild Rockies v. Cottrell, 2011 WL 208360, at *7 (9th Cir. Jan. 25, 2011). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. In cases brought by prisoners involving conditions of confinement, any preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Initially, the principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision after a trial on the merits. See 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010). As noted

1  above, in addition to demonstrating that he will suffer irreparable harm if the court fails to grant
2  the preliminary injunction, plaintiff must show a "fair chance of success on the merits" of his
3  claim. Sports Form, Inc. v. United Press International, Inc., 686 F.2d 750, 754 (9th Cir. 1982)
4  (internal citation omitted).

5  Inmates do not have a constitutional right to be housed at a particular facility or
6  institution or to be transferred, or not transferred, from one facility or institution to another.
7  Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Johnson v. Moore, 948 F.2d 517, 519 (9th
8  Cir. 1991) (per curiam). "Prison officials [may not] transfer an inmate to another prison in
9  retaliation for the inmate's exercise of his First Amendment right to pursue federal civil rights
10 litigation." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). However, "[s]peculative injury
11 does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."
12 Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988), citing Goldie's
13 Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984). Rather, a presently existing
14 actual threat must be shown, although the injury need not be certain to occur. See Zenith Radio
15 Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130-31 (1969); FDIC v. Garner, 125 F.3d 1272,
16 1279-80 (9th Cir. 1997), cert. denied, 523 U.S. 1020 (1998); Caribbean Marine, 844 F.2d at 674.

17 First, plaintiff alleges no specific facts demonstrating that defendant Cannedy's
18 actions in refusing plaintiff's request to remain in the EOP cell was motivated by retaliation.
19 Plaintiff appears to argue that the fact that Cannedy allowed inmate Thomson to remain in the
20 EOP cell pending availability on B Facility demonstrates a retaliatory motive. However, timing
21 alone is insufficient. Not every allegedly adverse action will support a retaliation claim. See e.g.
22 Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on
23 the logical fallacy of post hoc, ergo propter hoc, literally, "after this, therefore because of this.").
24 Just because inmate Thomson was allowed to remain in the EOP cell does not demonstrate that
25 defendant Cannedy's earlier decision to transfer plaintiff to Facility C was motivated by
26 ////

retaliation.  Moreover, just because defendant Cannedy transferred plaintiff to Facility B two years ago, while Facility B was allegedly having a race war (dkt. no. 33 at 2), does not demonstrate a retaliatory motive without more factual allegations demonstrating such a motive.

        Second, it appears both Facility B and C-yard have had race wars.  Plaintiff previously argued that his life was put at risk while he was housed on Facility B because Facility B experienced two race riots over a period of two years.  (Dkt. No. 23 at 4.)  However, the injuries at issue in this action were not incurred during the January 19, 2010, or May 20, 2011 race riots at Facility B.  Rather, plaintiff's instant injuries resulted from an altercation on the B Facility yard on July 21, 2010, over two years ago.  Because Facility B where plaintiff was previously housed also experienced race riots, and plaintiff was not injured during the race riots, plaintiff fails to demonstrate that his housing on C-yard while it is on lockdown because of an alleged race war, does not demonstrate a threat of irreparable harm.[1]

        Third, plaintiff appears to claim that he has a medical need to be housed on B-Facility.  However, plaintiff previously submitted the September 22, 2010 letter from Dr. Preet Sahota, M.D., Chief Physician and Surgeon at California State Prison, Sacramento, who states there is no medical reason for plaintiff to be housed at either California Men's Colony or California Medical Facility.  (Dkt. No. 22 at 38.)  Moreover, plaintiff provided Dr. Sahota's August 25, 2010 letter in which Dr. Sahota explained that plaintiff's primary care physician recommended plaintiff's housing at the Out-patient Housing Unit ("OHU") for plaintiff's safety, but that

> it is not medically necessary for [plaintiff] to be moved to the OHU.  If you feel safe in your current housing and disagree with the move, you may stay where you are currently housed.

(Dkt. No. 22 at 36.)  Plaintiff apparently declined the OHU alternative housing assignment,

---

[1] Indeed, another court previously found that plaintiff was not in imminent danger if he was not transferred to a medical facility because of his stomach tumor.  <u>Farley v. Capot, et al.</u>, 1:06-cv-1760 LJO MJS (Fresno Division) (Dkt. No. 58 at 3).

4

because OHU housing would not allow plaintiff to program.  (Dkt. No. 22 at 37.)  Thus, plaintiff's claim that he requires special housing due to his medical need is belied by the instant record.

Fourth, in this action, plaintiff raises Eighth Amendment challenges based on defendants' alleged failure to protect plaintiff from an assault on July 21, 2010.  Because the instant motion challenges plaintiff's July 3, 2012 placement on C-yard, the motion is not cognizable as part of the underlying complaint, and plaintiff's new claims will not be given a hearing on the merits at trial.

Finally, injunctive relief should be granted "'sparingly, and only in a clear and plain case.'"  Rizzo v. Goode, 423 U.S. 362, 378 (1976) (quoted case omitted).  The mere possibility that plaintiff might be injured while housed on C-yard is insufficient to support an injunctive relief request.  Pratt, 65 F.3d at 802 (holding that Pratt failed to establish that his transfer was effected for retaliatory reasons, and was not justified by neutral institutional objectives.)  Moreover, the Supreme Court has cautioned the federal courts not to interfere with the day-to-day operations of the prisons, especially those decisions related to security, a task which is best left to prison officials who have particular experience in dealing with prisons and prisoners.  See Turner v. Safley, 482 U.S. 78 (1987).  Because placement of inmates in particular facilities is often a matter of security, and plaintiff has asserted only speculative grounds to support his claim of retaliation, the court declines to recommend an order prohibiting plaintiff's transfer to C-yard.

For all of the above reasons, IT IS HEREBY RECOMMENDED that plaintiff's July 6, 2012 motion for injunctive relief (dkt. no. 33) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 21, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

farl1830.pi3