IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEONARD FARLEY,

    Plaintiff,                           No. 2:11-cv-1830 KJM KJN P

    vs.

TIM VIRGA, et al.,

    Defendants,                    FINDINGS AND RECOMMENDATIONS

                                /

        Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42 U.S.C. § 1983. On August 1, 2011, plaintiff consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c). Plaintiff alleges that defendants Virga, Mini, Lizarraga, and Cannedy failed to protect plaintiff from harm because they allowed Hispanic inmates on the yard with plaintiff and other Black inmates on July 21, 2010, and because plaintiff is susceptible to serious injury due to a tumor. Plaintiff also alleges defendants Dr. Sahota and Dr. Bal violated plaintiff's Eighth Amendment rights. Pending before the court is defendants' motion to dismiss plaintiff's claims against defendants Virga, Mini, Lizarraga, and Cannedy as barred by Heck v. Humphrey, 512 U.S. 477 (1994), and to dismiss plaintiff's claims against defendants Dr. Sahota and Dr. Bal for failure to state a claim. As explained more fully below, the court recommends that defendants' motion should be granted.

I. <u>Motion to Dismiss</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true the allegations of the complaint in question, <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 554 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" <u>Erickson</u>, 551 U.S. 89, 93 (quoting <u>Bell Atlantic</u> at 554, in turn quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).

Generally, a court must resolve a motion to dismiss under rule 12(b)(6) by looking only at the face of the complaint. <u>Van Buskirk v. CNN</u>, 284 F.3d 977, 980 (9th Cir. 2002). It may, however, rely on documents attached to the complaint or incorporated by reference in the complaint or matters subject to judicial notice without converting the motion to dismiss into a summary judgment motion. <u>United States v. Ritchie</u>, 342 F.3d 903, 907 (9th Cir. 2003).

Pursuant to the Eighth Amendment's prohibition on cruel and unusual punishment, "[p]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1991). The failure of prison officials to protect inmates from attacks by other inmates may rise to level of an Eighth Amendment violation when: (1) the deprivation is "objectively, sufficiently serious" and (2) the prison officials had a sufficiently culpable state of mind, acting with deliberate indifference to a substantial risk of harm. <u>Hearn v. Terhune</u>, 413 F.3d 1036, 1040 (9th Cir. 2005) (citing <u>Farmer</u>). "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or

omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835.

Also, the Eighth Amendment's prohibition of cruel and unusual punishment extends to medical care of prison inmates. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). In order to state a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a prison inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 529 U.S. at 106.

II. Plaintiff's Amended Complaint

This case is proceeding on plaintiff's October 25, 2011 amended complaint.

A. Defendants Virga, Mini, Lizarraga and Cannedy

Plaintiff alleges that defendants Virga, Mini, Lizarraga and Cannedy failed to protect plaintiff in violation of the Eighth Amendment. Plaintiff states that he is dying from an incurable stomach cancer which causes him to have a very large, upper quadrant, abdominal tumor. (ECF No. 13 at 5.) Plaintiff alleges that on July 21, 2010, defendants knowingly placed plaintiff in the middle of a race war by intentionally placing Hispanic inmates on the yard with plaintiff and two other Black inmates.[1] (ECF No. 13 at 6.) Plaintiff claims that he and the other two Black inmates went to look at the package list on the yard, and that while they were reading the list, officers were letting inmates from 6 Block out to the yard, including three Hispanic inmates. As the three Black inmates were starting to walk the yard, plaintiff alleges that the three Hispanic inmates "attacked and bombarded" the three Black inmates, including plaintiff. (ECF No. 13 at 8.) Plaintiff alleges that he "tried his best to keep any trauma from happening to his tumor but his efforts fell short," and that he "endured several weeks of . . . pain and sickness." (Id.)

////

---

[1] Plaintiff was housed at California State Prison, Sacramento ("CSP-SAC") at all times relevant herein. In his verified amended complaint, plaintiff refers to Folsom Prison, New Folsom, and Folsom State Prison. To avoid confusion, the court refers to CSP-SAC.

Plaintiff claims that he was released to the "violent main yard where he was forced to participate in [a] 3 on 3 gladiator style bout." (ECF No. 13 at 12-13.)

Plaintiff provided a copy of the rules violation report ("RVR"), Log No. B-10-07-041, in which plaintiff was cited for leading and participating in a riot[2] on July 21, 2010. (ECF No. 13 at 39.) The RVR states that reporting employee J. Defazio witnessed plaintiff and two other Black inmates begin walking toward the three Hispanic inmates who were just released to the B-Yard, and "were punching each other." (ECF No. 13 at 39.) The officer noted that plaintiff and inmate Torres were "exchanging punches." (Id.) In the appended supplemental report, witness Lt. Cannedy stated that he

> observed three black inmates later identified as Farley. . ., Lacey . . . and Carter. . . walk out from the Central Tower Gate toward 5 block, where they waited as staff were processing inmates to the yard. Staff finished processing the inmates from 5 block and proceeded to the front of 6 block where they were going to release inmates for the main yard. At this time, Farley, Lacey and Carter moved over to the six SHU yard wall by the Canteen list. They remained in the area for several minutes, while other inmates in the area moved away from them. As Hispanic inmates later identified as Pegues . . ., Zuniga . . . and Torres . . . exited the 6 block yard door for processing by staff to the main yard, I observed Farley, Lacey and Carter walk rapidly toward Pegues, Zuniga and Torres and when Farley, Lacey, and Carter were (what appeared to be) approximately three to four feet away from Pegues, Zuniga and Torres, all six of the inmates appeared to be fighting simultaneously. I observed numerous staff responding to the area utilizing . . . pepper spray. . . . The actions of Lacey, Farley and Carter appeared to be preplanned in that they appeared to be waiting for the Hispanic inmates to be released to the yard.

(ECF No. 13 at 40.)

Plaintiff also provided the first page of the August 24, 2010 Serious Rules Violation Report (CDC-115), which cited plaintiff for a violation of 3005(d)(1).[3] (ECF No. 13 at 34.)

---

[2] Under the section, "specific acts," the handwritten words "Leading and" appear over the typewritten words "PARTICIPATION IN A RIOT," and the initials "CPC" are written to the right of the handwritten words. (ECF No. 13 at 39.)

[3] This code citation appears to be in error. California Code of Regulations, Title 15, § 3005(d)(1) provides:

4

Plaintiff claims defendants Virga, Mini, Lizarraga and Cannedy were aware of plaintiff's medical condition, and were responsible for plaintiff being released to the yard on July 21, 2010. Plaintiff also alleges that defendant Cannedy falsified the July 21, 2010 RVR, and that a video of the July 21, 2010 incident will show that the Hispanic inmates took the first blows against the Black inmates. (ECF No. 13 at 13.)

Plaintiff also provided a copy of the August 4, 2010 B-Facility Program Status Memorandum which described the July 21, 2010 attack as follows:

> On July 21, 2010, during an effort to resume normal yard program with Modified Program inmates, via a categorized release, a Riot occurred amongst three Black and three Hispanic inmates in front of B6 Block. Staff utilized force in the form of Chemical Agents, Physical, and Handheld Batons. None of the involved inmates were seriously injured. . . .

(ECF No. 13 at 31.)

As a result of the RVR, plaintiff was found guilty, and assessed a secured housing unit ("SHU") term of three months, and a ninety day forfeiture of credits ("FOC"). (ECF No. 13 at 29, 69.)

Plaintiff seeks monetary damages and injunctive relief.[4] (ECF No. 13 at 59-60.)

---

> Inmates shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force or violence upon another person.

Id. Section 3005(d)(2) refers to encouraging a riot: "Inmates shall not, with the intent to cause a riot, willfully engage in conduct that urges a riot, or urges others to commit acts of force or violence at a time and place under circumstances that produce a clear and present and immediate danger of acts of force or violence or the burning or destroying of property." Id. Actual participation in a riot is proscribed by § 3005(d)(3), which reads "Inmates shall not participate in a riot, rout, or unlawful assembly." Id. Plaintiff's September 22, 2010 Program Review notes plaintiff was found guilty of participating in a riot. (ECF No. 13 at 29.) The April 12, 2011 Director's Level Appeal Decision noted that plaintiff was found guilty of leading and participating in a riot. (ECF No. 13 at 71.)

[4] Plaintiff asks the court to "award injunctive relief," but does not identify any specific relief sought. (ECF No. 13 at 60.) Plaintiff did not address the issue of injunctive relief in his opposition to the motion. (ECF No. 40, *passim*.)

B. <u>Defendants Dr. Bal and Dr. Sahota</u>

Following the July 21, 2010 incident, plaintiff requested a transfer to a prison hospital to avoid the potential dangers the mainline prisons presented due to plaintiff's tumor. Although plaintiff's primary care physician Dr. Duc was allegedly "on board" with plaintiff's request to be moved to a prison hospital, plaintiff contends that Dr. Sahota refused to move plaintiff to a prison hospital and falsely claimed the decision was made by Dr. Duc. (ECF No. 13 at 18.) Plaintiff claims that he should not be placed in the Outpatient Hospital Unit ("OHU") in CSP-SAC because there is no programming there, which plaintiff argues he is entitled to receive.

In support of his allegations, plaintiff provided the July 28, 2010 report of his oncologist who noted that plaintiff

> is clearly at risk for tumor pain, bleeding and nausea/vomiting from strenuous activity and trauma due to altercations which seems to be a part of daily life in prison. It would be beneficial for him to avoid ALL risk for trauma to the tumor and to reduce activity to low level work without heavy lifting, bending or motions.

(ECF No. 13 at 23.)

Plaintiff also provided copies of letters written to Dr. Sahota, and the responses. On August 17, 2010, plaintiff wrote Dr. Sahota, protesting the decision to have plaintiff moved to the OHU. (ECF No. 13 at 48.) Plaintiff claimed that keeping him at CSP-SAC put his life in danger, and contended he was supposed to be placed in California Men's Colony ("CMC") or the California Medical Facility in Vacaville ("CMF"). (<u>Id.</u>) Plaintiff disputed being housed in the OHU because he was not on any medication that could not be given on the mainline, he is not on an I.V., and is not bedridden, and thus concluded Dr. Sahota was trying to send plaintiff to the OHU "for retaliatory reasons." (<u>Id.</u>) On August 25, 2010, Dr. Sahota replied, stating:

> The decision to place you in the OHU was not meant to be retaliatory in any way. The recommendation came from your primary care physician. Based on your diagnosis it was suggested that you would be safer and better served in the OHU. However, it is not medically necessary for you to be moved to the OHU. If you feel safe in your current housing and disagree with the move, you may stay where you are currently housed.

6

(ECF No. 13 at 50.) On September 2, 2010, plaintiff replied to Dr. Sahota, explaining that the reason plaintiff would not go to the OHU was because "there is no program to be had whatsoever" in the OHU. (ECF No. 13 at 51.) Plaintiff emphasized that he has a right to program like any other inmate, and that the only places where he can be safely housed is at CMF or CMC because "neither one of those prisons have riots going on." (Id.) On September 22, 2010, Dr. Sahota replied to plaintiff, stating that "[m]edically, there is no reason for [plaintiff] to be housed at either [California Men's Colony or California Medical Facility]." (ECF No. 13 at 52.)

On October 3, 2010, plaintiff wrote to Dr. Bal, as defendant Dr. Sahota's supervisor, seeking a meeting to discuss why plaintiff could not be moved away from CSP-SAC, which plaintiff describes as a "ticking time bomb" due to the "outbreaks of extreme violence." (ECF No. 13 at 19.) Plaintiff did not hear from Dr. Bal, so plaintiff wrote Dr. Bal again on October 20, 2010. Plaintiff claimed that due to plaintiff's medical condition, the medical staff at CSP-SAC was denying plaintiff safety and protection by keeping plaintiff on the violent mainline. (ECF No. 13 at 57.) Plaintiff claimed that his medical condition required him to be housed at CMC or CMF, and asked Dr. Bal to confirm whether he agreed with Dr. Sahota that plaintiff's medical condition was not serious enough to be moved to a safer prison. (ECF No. 13 at 57-58.) Plaintiff received no response from Dr. Bal.

In support of his position that the OHU provides no programming, plaintiff provided the declaration of inmate Hamm, who avers that while he was housed in the OHU he was denied all access to the law library, provided no outside exercise, and was not allowed to program for the entire three month period. (ECF No. 13 at 54.)

Plaintiff contends defendants Dr. Sahota and Dr. Bal failed to protect plaintiff by not moving plaintiff to a medical prison, and his housing at CSP-SAC subjects plaintiff to a risk of injury from the race wars and violence that take place at CSP-SAC.

////

7

III. Application of Heck v. Humphrey

      Defendants move to dismiss plaintiff's Eighth Amendment claim against defendants Virga, Mini, Lizarraga, and Cannedy because they argue a judgment in plaintiff's favor would necessarily imply the invalidity of his conviction of participation in a riot. Beets v. County of Los Angeles, 669 F.3d 1038, 1041 (9th Cir. 2012) ("If a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.")  These defendants contend that a judgment in plaintiff's favor on the failure to protect claim would necessarily imply the invalidity of plaintiff's prison disciplinary conviction because such claim is based on the contention that plaintiff was an innocent victim of an assault, and that the prison disciplinary record was falsified by defendant Cannedy. See Cunningham v. Gates, 312 F.3d 1148 (9th Cir. 2002) (prisoner's excessive force claim against police officers Heck-barred where prisoner was convicted of provoking the policemen's response.)  As such, defendants argue, this failure to protect claim is barred by the favorable termination rule announced in Heck v. Humphrey, 512 U.S. 447 (1994).

      In opposition, plaintiff argues that he is not challenging the outcome of the RVR, that the videotape of the incident will show that the Black inmates were attacked first, and that he demonstrates that defendants had knowledge of a substantial risk of harm when they released the Hispanic inmates onto the yard. (ECF No. 40 at 2.)  Plaintiff further contends that knowledge of a substantial risk is a question of fact, precluding dismissal at this stage of the proceedings, and that he is entitled to use self-defense to protect himself from harm.  In conclusion, plaintiff argues defendants' motion should be denied "because a judgment in [his] favor would not imply the invalidity of his conviction for participation in a riot, because he was attacked first, which video will prove, when shown to the court." (ECF No. 40 at 7.)

      In Heck, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that

8

the conviction or sentence has been [overturned]." Id. at 486-87. In Edwards v. Balisok, 520 U.S. 641, 648 (1997), the United States Supreme Court extended the rule of Heck to claims involving prison disciplinary proceedings that resulted in the loss of good-time credits. Edwards, 520 U.S. at 646. Where such claims, if successful, would implicate the validity of the deprivation of good-time credits, they must be dismissed unless the disciplinary conviction has been invalidated. Id. A "state prisoner's § 1983 action is barred (absent prior invalidation) -- no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) -- *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

However, "Heck's requirement to resort to state litigation and federal habeas before § 1983 is not implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." Muhammad v. Close, 540 U.S. 749, 751 (2004).

Here, defendants rely on Cunningham v. Gates, 312 F.3d 1148 (9th Cir. 2002), and the undersigned finds their argument persuasive. Id., 312 F.3d at 1152-55. In Cunningham, two robbers exchanged gunfire with police officers surrounding their getaway car. The exchange resulted in the death of one robber and an attempted murder and felony-murder conviction for the other. Id. at 1152. Following his conviction, the surviving robber attempted to bring an excessive force claim against the officers. Id. He argued that the police fired first, and that the officers' use of excessive force created a situation that provoked him into firing his weapon, which the court identified as a "danger creation theory." Id. at 1154 (citation omitted). The Ninth Circuit held that both theories were barred under Heck because they disputed factual issues that had been resolved in the criminal action against him. The theory that the police fired first was "squarely barred" because the plaintiff's felony murder conviction required the jury to find that he had intentionally provoked the deadly police response, and did not act in self-defense. Id. at 1152. The danger creation theory was also barred because Cunningham could not prove that

9

the police used excessive force when they jammed the getaway car because it would necessarily imply the police were not acting within the scope of their duties. Cunningham, at 1154-55.

While the challenge in Cunningham involved a criminal conviction, and the instant case involves a prison disciplinary, both prisoners placed themselves in harm's way. Like Cunningham, the facts alleged in this lawsuit and the facts at issue in the disciplinary hearing arose out of the same instance of conduct. Thus, plaintiff's claims are "squarely barred" to the extent that his claims depend on the theory that he did not lead or participate in the riot. The documents provided by plaintiff demonstrate that he was found guilty of leading or participating in the July 21, 2010 riot. Therefore, plaintiff's claim that he was not the aggressor, but was the victim, of an attack on July 21, 2010 necessarily implicates the validity of the prison disciplinary. See Cunningham, 312 F.3d at 1152.

Liberally construed, plaintiff claims that defendants failed to protect him on July 21, 2010, because defendants were aware that Hispanic and Black inmates would fight if placed on the yard together, and because defendants were aware that plaintiff had cancer and an abdominal tumor which defendants knew or should have known posed a substantial risk of harm to plaintiff if he became involved in a violent altercation.[5] However, as a result of the July 21, 2010 incident, plaintiff was found guilty of leading or participating in a riot and was assessed a good time credit forfeiture of ninety days.

In order to prevail on this failure to protect theory, plaintiff must demonstrate that (1) the deprivation is "objectively, sufficiently serious" and (2) the prison officials had a sufficiently culpable state of mind, acting with deliberate indifference to a substantial risk of harm. See Farmer, 511 U.S. at 837. But plaintiff cannot demonstrate that prison officials were deliberately indifferent to a substantial risk of harm if plaintiff initiated the risk of harm. It is inconsistent for

---

[5] Yet, being on the yard was potentially dangerous for all inmates, and as discussed below, the medical doctors did not feel that plaintiff's medical condition precluded him from being housed with the general population at CSP-SAC.

1  plaintiff to argue that defendants were deliberately indifferent to his safety and failed to protect
2  plaintiff where the RVR stated that while other inmates walked away, plaintiff was one of the
3  three inmates who walked rapidly up to, and began fighting with, the three Hispanic inmates,
4  because such a position necessarily calls into question the validity of the RVR finding that
5  plaintiff led or participated in the July 21, 2010 riot.  Indeed, plaintiff contends that he "was
6  placed in a gladiator bout for staff's amusement," and that defendant Cannedy falsified the RVR
7  stating that "plaintiff lead [sic] the riot."  (ECF No. 13 at 13.)  Therefore, in order for plaintiff to
8  prevail on this section 1983 action, plaintiff must prove facts that are inconsistent with the prison
9  disciplinary.

10  The instant case is also similar to Garces v. Degadeo, 2010 WL 796831 (E.D. Cal. 2010).
11 In Garces, the prisoner claimed that defendants failed to protect him from his cell mate's attack.
12 Id., at *1.  Garces alleged he told defendant Smith that Garces could not fight because he had
13 surgery on his right shoulder, and that he was going to be in danger because he and his cell mate
14 were not getting along.  Id.  Six days later, Garces and his cell mate began striking each other as
15 they exited their cell.  Garces was found guilty of mutual combat and lost ninety days of good
16 time credits.  At summary judgment, the court found that to prevail on the failure to protect
17 claim, Garces would have to negate an element of the mutual combat violation, that is, Garces
18 "would have to prove that he did not engage in 'mutual combat,' but that his cellmate attacked
19 him."  Id., at *3.  Thus, like Garces, plaintiff would have to prove that he did not lead or
20 participate in the July 21, 2010 riot, but that he was an innocent victim, which he cannot prove
21 without implicating the validity of the prison disciplinary.

22 Therefore, whether or not plaintiff specifically challenges the RVR findings, plaintiff
23 cannot avoid the Heck bar by arguing that he was the victim because the RVR found plaintiff led
24 or participated in the riot on July 21, 2010.  The undersigned takes judicial notice of the court's
25 electronic records reflecting that plaintiff has not filed a petition for writ of habeas corpus
26 challenging the prison disciplinary.  (ECF No. 39.)  Thus, defendants' motion to dismiss based

on Heck should be granted without prejudice to the filing of a new civil rights action if and when plaintiff's disciplinary finding of guilt is invalidated.[6]

IV. Eighth Amendment Claims Against Dr. Sahota and Dr. Bal

Defendants contend that plaintiff's claims against these doctors should be dismissed because plaintiff's allegations allege a difference of opinion between plaintiff and medical staff. Defendants further argue that plaintiff failed to demonstrate that the alleged refusal to transfer plaintiff after the July 21, 2010 riot caused plaintiff harm. In opposition, plaintiff argues that defendants' motion should not be granted because defendants Dr. Sahota and Dr. Bal are aware of the risk plaintiff faces because of his tumor, and that their failure to transfer him to a safer location is a failure to follow Dr. Gong's order that plaintiff must avoid all trauma. (ECF No. 40 at 6.) Plaintiff claims defendants want to place him in the OHU which would deprive plaintiff of programming. In reply, defendants note that plaintiff failed to address their position that plaintiff's claim is based on a difference of opinion, and that plaintiff failed to demonstrate defendants' refusal to transfer him to a medical facility caused plaintiff injury. Defendants also contend that if plaintiff believes he is not safe on the CSP-SAC mainline, plaintiff should request placement on the sensitive needs yard.

Despite plaintiff's characterization of his claim against defendants Dr. Sahota and Dr. Bal as a failure to protect claim, the gravamen of plaintiff's claim is that these defendants were deliberately indifferent to plaintiff's serious medical needs by refusing to transfer plaintiff to a prison hospital.

To establish a violation of the Eighth Amendment with respect to medical care, a prisoner must satisfy both the objective and subjective components of a two-part test. Farmer, 511 U.S. at 834. "First, the plaintiff must show a serious medical need by demonstrating that failure to treat

---

[6] If plaintiff wishes to challenge the RVR that resulted in the forfeiture of time credits, he must do so in a petition for a writ of habeas corpus. See Young v. Kenny, 907 F.2d 874, 877 (9th Cir. 1990) (habeas corpus is sole remedy for challenge to deprivation of time credits).

a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Here, the documents appended to plaintiff's complaint demonstrate that defendant Dr. Sahota stated that there was no medical need for plaintiff to be housed in the OHU, CMF or CMC. Despite this medical opinion, Dr. Sahota agreed to transfer plaintiff to the OHU. Plaintiff concedes he refused to be housed at the OHU because the OHU does not allow plaintiff to program. However, Dr. Sahota's agreement to transfer plaintiff to the OHU in response to plaintiff's safety concerns cannot be viewed as deliberate indifference. Rather, defendant Dr. Sahota offered plaintiff an opportunity to be housed in a less violent facility, despite Dr. Sahota's opinion that plaintiff was not medically required to be housed in the OHU. While plaintiff is free to refuse the recommended housing in the OHU, plaintiff does not have a constitutional right to be housed at a particular facility or institution or to be transferred, or not transferred, from one facility or institution to another. Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam). Thus, plaintiff's claims against defendant Dr. Sahota is unavailing, and plaintiff's claims against Dr. Bal fail for the same reason.

To the extent plaintiff claims that Dr. Sahota and Dr. Bal failed to protect plaintiff from the July 21, 2010 incident, such claim is unavailing because plaintiff contacted his doctors about his safety concerns following the incident. Thus, defendants Dr. Sahota and Dr. Bal cannot be liable for failing to protect plaintiff from the incident because they were contacted after the July 21, 2010 incident.

The documents provided by plaintiff demonstrate that Dr. Sahota found that it was not medically necessary for plaintiff to be housed in a prison hospital; therefore, plaintiff's belief that he must be housed at CMF or CMC due to his tumor constitutes a difference of opinion which fails to state a cognizable civil rights claim.

////

Plaintiff also claims that his case is analogous to those cases where medical defendants fail to act on medical recommendations for specialized care, citing Johnson v. Lockhart, 941 F.2d 705, 706-07 (8th Cir. 1991). (ECF No. 40 at 6.) In Johnson, a prison physician recommended immediate surgery for the prisoner's inguinal hernia, and warned that the inmate's condition was serious, even life-threatening; however, the surgery was not performed until ten months later. Id. Thus, plaintiff's case is distinguishable. Here, it is not disputed that plaintiff is receiving medical treatment for his stomach cancer. Plaintiff's oncologist Dr. Gong did not recommend that plaintiff be transferred to a prison hospital, but that plaintiff should avoid all trauma. Dr. Gong recommended that plaintiff decrease his activity level and avoid all trauma to the abdomen; such recommendation does not require medical treatment. Plaintiff raises no allegations that he has sustained further trauma to his tumor, despite his continued housing at CSP-SAC. Moreover, as set forth above, defendant Dr. Sahota attempted to transfer plaintiff to the OHU, which plaintiff refused. Thus, plaintiff's argument is unavailing.

For all of the above reasons, the court recommends that the motion to dismiss, filed by defendants Dr. Sahota and Dr. Bal, be granted.

V. Recommendations

Accordingly, for all of the reasons set forth above, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 38) be granted, and plaintiff's claims be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 30, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

farl1830.mtd